IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

YUVAYA DE'ASHAHTE MORRISEY,        )
                                    )
            Plaintiff,              )
      v.                            )        1:17CV234
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social       )
Security,                           )
                                    )
                                    )
            Defendant.              )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Yuvaya D. Morrisey ("Plaintiff") brought this action to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment. For the reasons stated below, Commissioner's Motion for Judgment on the Pleadings [Doc. #11] is GRANTED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] is DENIED.

I.

Plaintiff filed an application for child supplemental security income in December of 2012, alleging a disability onset date as of August 1, 2010. (Administrative Record ("AR") at 154-59.) The application was denied initially and upon reconsideration. (Id. at 135-138, 134.) After a hearing, at which Plaintiff moved to amend the onset date to December 7, 2012, the ALJ determined on

1

December 16, 2015, that Plaintiff was not disabled under the Act as either a child or an adult. (Id. at 10-32, 55, 50-108.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (Id. at 1-3.)

The scope of judicial review of the Commissioner's final decision is specific and narrow. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). In reviewing for substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. Id.

The ALJ analyzed Plaintiff's claim both as a minor and as an adult. First, the ALJ followed the three-step process to determine whether an individual under the age of eighteen is disabled. See 20 C.F.R. § 416.924. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of application. (AR at 14.) At step two, the ALJ found that prior to turning eighteen, Plaintiff had the following severe impairments: epilepsy, learning disorder, and mood disorder. (Id. at 15.) At step three, the ALJ found that prior to turning eighteen, Plaintiff did not have an impairment or combination of impairments that

functionally equaled the listing. (Id. at 15-16.) In evaluating whether Plaintiff's impairments functionally equaled a listing, the ALJ found marked limitations in acquiring and using information and less than marked limitations in the remaining categories. (Id. at 21-26.) As such, the ALJ concluded that Plaintiff was not disabled prior to turning eighteen. (Id. at 26.)

Second, the ALJ determined whether the claimant was disabled as an adult, as set forth in 20 C.F.R. § 416.920. The ALJ found that Plaintiff had not developed any new impairment or impairments since turning eighteen. (AR. at 26.) The ALJ next determined that since turning eighteen, Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (Id.) The ALJ then found that since turning eighteen, Plaintiff had the residual functional capacity ("RFC") to perform medium work

> except that [she] would never climb ladders, ropes, or scaffolds; would have no exposure to extreme heat, humidity, and wetness, dust, odors, fumes and pulmonary irritants, unprotected heights, hazardous machinery, or moving mechanical parts; [she] would never drive an automobile; would be limited to perform simple, routine and repetitive tasks but not at a production rate pace, would make only simple work-related decisions and would have only occasional interaction with supervisors, co-workers, and the public.

(Id. at 28.) At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (Id. at 30.) At step five, the ALJ found that since turning eighteen, there were jobs which Plaintiff could perform consistent with her RFC, age, education, and work experience. (Id. at 30.) Consequently, the ALJ determined that Plaintiff was not disabled under the Act. (Id. at 31.)

II.

In this appeal, Plaintiff does not challenge the ALJ's finding that she was not disabled under the child's standard prior to turning eighteen. Instead, her arguments relate only to the ALJ's analysis under the adult standard. More specifically, Plaintiff raises three issues. First, Plaintiff contends that the ALJ materially erred in assessing her mental RFC. (Pl.'s Brief in Supp. of Mot. for J. Reversing or Modifying the Decision of Comm'r of Soc. Sec. ("Pl.'s Br.") at 2-7 [Doc. #10].) Second, Plaintiff argues that the ALJ erred in relying on testimony from a vocational expert that did not accurately take into consideration all her limitations. (Id. at 8-9.) Third, Plaintiff contends that the ALJ failed to adequately take into consideration her history of migraines in his step three analysis. (Id. at 9-11.) As explained below, none of these objections have merit.

A.

Plaintiff first objects that the ALJ materially erred in assessing her mental RFC. (Id. at 2-7.) In support of this objection, Plaintiff makes several sub-arguments. First, Plaintiff argues that the ALJ failed "to complete a proper assessment of her social functioning limitations." (Id. at 4.) Second, Plaintiff argues the ALJ failed to address how her social functioning limitations affect her ability to get along with her co-workers or the general public. (Id. at 4-6.) Third and finally, Plaintiff argues the ALJ failed to consider if she could perform work-related functions for a full workday. (Id. at 6-7.) Each argument is addressed in turn.

4

1.

Plaintiff's first argument in support of her first objection focuses on the requirements of SSR 96-8p. (Id. at 4.) Plaintiff argues that SSR 96-8p required the ALJ to analyze her "ability to perform '[w]ork-related mental activities generally required by competitive, remunerative work (including) the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting'." (Id.) Plaintiff argues the ALJ violated this mandate when he "failed to discuss what effect, if any Morrisey's difficulties with activities of daily living, when combined with her other impairments, have on her ability to engage in work activity on a sustained basis." (Id.)

The operative precedent interpreting SSR 96-8p in the Fourth Circuit is Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), which held, in part, that an ALJ should explain why moderate limitations in concentration, persistence, or pace do not translate into a limitation in the RFC, and if he or she does not, remand is warranted. (emphasis added). Many district courts within the Fourth Circuit "have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of mild limitations in the broad areas of functioning or justify the omission of such restrictions." Jackson v. Berryhill, No. 1:16CV1162, 2017 WL 3278903, at *8 (M.D.N.C. Aug. 1, 2017) (emphasis in original) (citing Ashcraft v. Colvin, No. 3:13CV00417RLVDCK, 2015 WL 9304561, at *9

5

(W.D.N.C. Dec. 21, 2015) & Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015)), adopted by unpublished judgment (Aug. 24, 2017).

Assuming this is the correct approach, and Mascio does in fact apply to mild limitations of functioning, the ALJ complied with this requirement[1]. The ALJ concluded that Plaintiff had mild limitations in her activities of daily living because of her need for "seizure precautions." (AR at 27.) The ALJ noted that Plaintiff "can bathe and dress herself, she attends school daily, she can do light cleaning, and she provides care for her baby,"[2] (id. at 27, 63, 79, 84-85, 92), and concluded that Plaintiff's "impairments are controlled with medication such that she has been able to continue her daily activities, hobbies and responsibilities," (id. at 30). The ALJ then included seizure precautions in the RFC, restricting Plaintiff to no driving, no climbing of ladders, ropes, or scaffolds, and no exposure to environmental hazards. (Id. at 28.)

Furthermore, Plaintiff does not argue the evidence justifies more than a mild limitation, nor does she explain what additional limitation is needed. (See generally Pl.'s Br.) See also, Jackson, 2017 WL 3278903 at *8 ("Plaintiff neither disputes

---

[1] If Mascio does not apply to mild limitations, then the ALJ still has not committed error, because Mascio applies a higher burden to the ALJ, and thus complying with it would necessarily guarantee exceeding the lower standard that would otherwise be applied.

[2] Both Plaintiff and her godmother reported that her seizure-related activity had become relatively infrequent in the prior eight months. (See AR 27 , 30, 89-90, 69-71, 97-98.)

6

the ALJ's finding of mild limitation in daily activities . . . nor makes any attempt to show how a mild limitation in daily activities should have further impacted the ALJ's RFC.")  Therefore, the ALJ did appropriately include restrictions arising out of her mild limitations in daily activities, and thus complied with Mascio.  The objection therefore has no merit.

2.

Courts have extended similar reasoning as that used in the analysis of daily living to the analysis of social functioning. See Moore v. Berryhill, No. 1:17-CV-00122-MR, 2018 WL 3543084, at *6 (W.D.N.C. July 23, 2018) (noting that in relation to social functioning, the court's "treatment of functional limitations arising from minor, mild health restrictions need not be as extensive and detailed as the treatment required regarding moderate restrictions. Mascio requires only that they be addressed adequately.")  Thus, a similar analysis is used to determine if the ALJ adequately addressed Plaintiff's limitations.

In this case, the ALJ adequately addressed Plaintiff's minor social functioning limitations.  The ALJ noted that after high school Plaintiff did not have problems getting along with people, was able to attend community college and make friends there, and communicated through Facebook and Twitter. (AR at 27.) Additionally, although Plaintiff said she could be rude sometimes without meaning to, and was nervous when people asked her questions, she was still able to relate well to the examiners. (Id.)  Furthermore, the ALJ mentioned that Plaintiff was "able to ask for questions if she needed help" in community college, and noted

7

that her godmother testified that she had matured since she had her baby and had no issues with others after leaving high school. (Id. at 30, 74, 76-77, 99.)

Although Plaintiff does discuss evidence suggesting she had more than mild issues in social functioning, the evidence she cites in support of this claim almost entirely pre-dates her improvement in social functioning after leaving high school. (Pl.'s Br. at 5-6.) Thus, the ALJ's analysis is consistent with this evidence, and therefore the ALJ adequately addressed Plaintiff's social functioning limitations and remand is not warranted.

3.

Plaintiff's third sub-argument under her first objection is that the ALJ failed to conduct the analysis required by Mascio after he determined she had a moderate limitation in concentration, persistence and pace. (Pl.'s Br. at 6.) This argument has no merit.

It is true that Mascio held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled tasks." Mascio, 7810 F.3d at 638. However, courts in our district have clarified this holding concluding,

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP [concentration, persistence, and pace]. Moreover, that approach makes sense. In Mascio, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain

8

> why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." <u>Where, as here, the ALJ has included a specific restriction that facially addresses "moderate"</u> (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) <u>limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.</u>

Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (emphasis added), adopted by unpublished judgment (M.D.N.C. Sept. 21, 2016).

The instant case illustrates the exact scenario the Grant court contemplated. Here the ALJ found Plaintiff had a moderate restriction in concentration, persistence, and pace, and thereby imposed a restriction of "simple, routine and repetitive tasks, <u>but not at a production rate pace</u>." (AR at 27-28) (emphasis added.) Plaintiff has made no allegations that she cannot perform this type of work, and therefore, Mascio requires no further explanation by the ALJ. Thus, Plaintiff's objection has no merit.

B.

Plaintiff's second objection argues that the ALJ erred in relying on testimony from a vocational expert that did not accurately take into consideration all her limitations because the vocational expert was asked and responded to a question that was less-restrictive than her actual RFC. (Pl.'s Br. at 8-9.) In posing the hypothetical question to the vocational expert, the transcript reflects the ALJ used

9

the phrase "only frequent interaction" instead of using the phrase used in the RFC of "occasional interaction." (Id. at 8; see also AR 102.)  It is possible this is a transcription error, because use of the word "infrequent" would be more consistent with the ALJ's use of the word "only" and with the RFC's use of "occasionally". But even if the ALJ did say "frequent interaction," it is not a mistake that warrants remand.

Several courts within this circuit have considered this issue and persuasively concluded that the ALJ's incorrect use of the phrase "frequent interaction" instead of "occasional interaction" in the hypothetical "did not change the outcome of the decision and amounts to harmless error." Fletcher v. Colvin, No.1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (quoting Blackstone v. Astrue, No. SKG-12-2776, 2014 WL 253538, at *3 (D. Md. Jan. 17, 2014)), adopted by unpublished judgment (March 28, 2016); see also Bradley v. Colvin, No. 2:14CV23774, 2015 WL 5725832, at *3-5 (S.D.W. Va. Sept. 30, 2015).

For instance, in Fletcher, the ALJ used the phrase "frequent interaction" in posing the hypothetical, even though the RFC used the phrase "occasional interaction." Id. at 9.  The Fletcher court noted that despite this, both of the compatible jobs identified by the vocational expert in response to the hypothetical contained the number eight in their DOT codes, which indicates the job requires the "lowest possible level of human interaction that exists in the labor force." Id. at 10.  Additionally, the DOT entries for both jobs "describe the amount of taking instructions required as not significant." Id.  Therefore, the court concluded that

10

the jobs identified would not require Plaintiff to exceed his RFC of "occasional interaction" and thus the error was harmless. Id.

Regardless of whatever phrase the ALJ actually used, Fletcher is instructive because like in Fletcher, the vocational expert identified three jobs satisfying the hypothetical: Marker, Linen Room Attendant, and Coffee Marker, all of which contained the number eight in their DOT codes, indicating the lowest level of human interaction possible, and which all describe the amount of "taking instructions" as "not significant." DOT, 369.687-026, 1991 WL 673074 (marker); DOT, 222.387-030, 1991 WL 672098 (linen room attendant); DOT, 317.684-010, 1991 WL 672750 (coffee maker). Therefore, even if the ALJ did err, because all the jobs provided by the vocational expert meet the stricter limitations posed by the RFC, the error by the ALJ was harmless, and does not warrant remand.

C.

In her third and final objection, Plaintiff argues two points: first, that the ALJ should have determined if her impairments, specifically her migraine headaches, functionally equaled Listing 11.03, (Pl.'s Br. at 10), and second, that the ALJ's failure to consider her migraine headaches in making the RFC justify remand, (id.). Neither of these arguments warrant remand.

1.

Plaintiff first argues that the ALJ committed reversible error by failing to consider if her migraine headaches functionally equaled Listing 11.03. (Id.) Before

11

an ALJ is required to consider if a plaintiff's impairments meet a listing, there must first be a threshold showing of severe impairments. Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 100 (4th Cir. 2015). In this case, Plaintiff met this threshold showing, because the ALJ determined she had several severe impairments. (AR at 26.) However, the ALJ did not determine that one of Plaintiff's severe impairments was her migraines. (Id.) In fact, the ALJ made no mention of her migraines at Step Two. (Id.)

Despite this, the ALJ was still required to consider what effect Plaintiff's migraines had, if any, when determining if Plaintiff's impairments functionally equal a Listing. "Congress explicitly requires that the combined effect of all the individual's impairments be considered, without regard to whether such impairment if considered separately would be sufficiently severe." Snelgrove v. Colvin, No. 8:15-cv-04440-JMC-JDA, 2015 WL 13229265, at *9 (D.S.C. Nov. 8, 2015) (internal quotations omitted) (quoting Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989)); see also, Tanner, 602 F. App'x at 100 ("Moreover, because Ms. Tanner made the threshold showing of severe impairments, the ALJ was required to continue the sequential evaluation and consider all of her impairments, both severe and non-severe, that significantly affect her ability to work.").

In this case, the ALJ considered Plaintiff's migraines and headaches, but only in analyzing whether she was disabled before reaching age eighteen. (See AR at 16, 18, 20.) Even if the ALJ did not think that Plaintiff's migraines as an adult would satisfy a Listing or would not satisfy a Listing when considered in

12

combination with any of her other impairments, he likely should have considered her migraines.

However, the failure to do so in this case constitutes harmless error, because there is minimal evidence in the administrative record regarding Plaintiff's migraines, and thus even if it had been considered, it would not have affected the outcome of the ALJ's decision that Plaintiff did not satisfy the requirements of the Listing.

Plaintiff argues that the ALJ should have considered Plaintiff's migraines when he evaluated if Plaintiff's impairments functionally equaled Listing 11.03. (Pl.'s Br. at 10.) Listing 11.03 is no longer in effect, but at the time of the ALJ's decision, it related to nonconvulsive epilepsy:

> 11.03 Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

Eden v. Berryhill, No. 2:16-cv-03703, 2017 WL 104380, at *15 (S.D.W. Va. Mar. 28, 2017) ("In January 2017, Section 11.00 was substantially revised . . . reserving Listing 11.03."). Despite the fact 11.03 concerns epilepsy, the Social Security Administration Program Operations Manual Systems ("POMS") DI 24505.015(B)(7)(B), entitled "Finding Disability Based on the Listing of Impairments," identifies it as "the most closely analogous listed impairment" for considering migraines. In line with this recommendation, courts have evaluated

13

ALJ decisions concerning migraines under this Listing. Eden, 2017 WL 1404380 at *16; see Worley v. Berryhill, No. 7:18-CV-16-FL, 2019 WL 1272540, at *3 (E.D.N.C. Feb. 4, 2019) ("For claims arising before Sept. 29, 2016, courts generally consider Listing 11.03 (Nonconvulsive Epilepsy) the appropriate listing for determining medical equivalence of a claimant's migraine headache impairment.").

To determine if a plaintiff's migraines are functionally equivalent to Listing 11.03, many courts have considered an alternate Listing definition created by Mesecher v. Berryhill, No. 4:15-CV-859-BL, 2017 WL 998373 (N.D. Tex. Mar. 15, 2017). See e.g. Worley, 2019 WL 1272540 at *4; Eden, 2017 WL 1404380 at *16. The Court in Mesecher determined that Listing 11.03, when applied to migraines, should state:

> 11.03 Migraine Headaches, documented by detailed description of a typical headache event pattern, including all associated phenomena, e.g. premonitory symptoms, aura, duration, intensity, accompanying symptoms, and treatment; occurring more frequently than once weekly, counting characteristic headache events. With (1) alteration of awareness, which means a condition of being inattentive, or not cognizant of one's surroundings and external phenomena as well as one's personal state or (2) significant interference with activity during the day that may result from, e.g., a need for a darkened, quiet room; lying down without moving; or a sleep disturbance that impacts on daytime activities.

Mesecher, 2017 WL 998373 at *4.

Using this modified Listing from Mesecher, in this case, there is not enough evidence in the administrative record to support a finding that Plaintiff's migraines could medically equal the criteria of Listing 11.03. Both the criteria of Listing 11.03 and the alternate definition created by Mesecher require that migraines

occur at least once a week, but the administrative record in this case does not show that Plaintiff suffered from weekly migraine headaches. When Plaintiff was a child, she did suffer from weekly migraines which were treated with a prescription drug, Maxalt, and which were well documented[3]. (See e.g. AR 115, 345, 371, 374, 378, 380, 382, 384, 386, 388.) But, as Plaintiff entered adulthood, she improved, as evidenced by her testimony that she no longer took any prescription medications for her migraines, and instead relied solely on ibuprofen, (AR at 84), and the administrative record which reflects that there was only one incident where Plaintiff sought treatment from migraines after her eighteenth birthday, (AR at 643.) (See also AR at 1121 (showing her prescription medication list as of April 2, 2015 does not contain a prescription for treatment of migraine headaches).)

Furthermore, when migraines are mentioned in Plaintiff's treatment records after her eighteenth birthday, save for the one occasion on which she sought treatment for a migraine, they are exclusively discussed in terms of past medical history. (See AR at 364, 396, 620, 712, 739, 753, 759, 864, 886, 1012, 1121, 1147.)

Thus, given Plaintiff's testimony and the evidence in the Administrative Record, Plaintiff's migraines do not occur weekly, and therefore Plaintiff would not have satisfied the Listing even if the ALJ had considered her migraines.

---

[3] Plaintiff raises no objections concerning how the ALJ evaluated her migraines when determining if she was disabled as a child, and so it is not considered by the Court.

15

Accordingly, the ALJ's failure to do so was in effect harmless error, and therefore remand is not warranted.

2.

Plaintiff's second argument related to her third and final objection is that the ALJ's failure to consider her migraine headaches in making the RFC justifies remand.  "[A]lthough some consideration of every impairment, separately and in combination with others, is required to ascertain a claimant's RFC, an ALJ need not incorporate restrictions in the RFC to reflect a claimant's non-severe impairments when the ALJ reasonably determines such impairments do not actually result in work-related functional limitations." Blevins v. Colvin, No. 5:15-cv-14240, 2016 WL 6987169, at *15 (S.D.W. Va. Sept. 16, 2016).  Given the lack of evidence regarding Plaintiff's migraines in the administrative record, the ALJ did not need to discuss Plaintiff's migraines, nor include an accommodation for them, because there was no evidence in the administrative record to suggest that Plaintiff's migraines would result in work-related functional limitations.  Thus, remand is not required.

III.

For the reasons stated herein, IT IS HEREBY ORDERED that Commissioner's Motion for Judgment on the Pleadings [Doc. #11] is GRANTED, and Plaintiff's

Motion for Judgment Reversing the Commissioner [Doc. #9] is DENIED.

This the 1st day of April, 2019.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge